FILED
MAY 15 2015
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROGER DALE PERSINGER,
    Plaintiff,

v.    Civil Action No. 5:14-cv-119
(Judge Stamp)

NORTHERN REGIONAL JAIL &
CORRECTIONAL FACILITY;
DALE GRIFFITH, Unit Manager;
JAMES RUBENSTEIN, Commissioner Division
of Corrections;
SYNTHIA GARDNER, Central Office Grievance Review;
DIANA MILLS, Counselor NNCF;
NANCY NINE, Counselor (NCF);
KAREN PSZCZOLKOWSKI, Warden (NCF);
BRANDY MILLER, Associate Warden of Programs;
JANE/JOHN DOE,
    Defendants.

## REPORT AND RECOMMENDATION

On September 3, 2014, *pro se* Plaintiff Roger Dale Persinger ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1.) After receiving a deficiency notice, Plaintiff filed his Court-approved form on October 2, 2014. (Docket No. 8.) The undersigned granted Plaintiff leave to proceed *in forma pauperis* on October 3, 2014. (Docket No. 15.) The defendants were ordered to answer on November 4, 2014. (Docket No. 22.)

After receiving an extension of time, Defendants filed a motion to dismiss and memorandum in support on December 5, 2014. (Docket Nos. 37 and 38.) On December 17, 2014, the undersigned issued notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file material responsive to Defendants' motion to dismiss. (Docket No. 39.) After receiving an extension of time, Plaintiff filed two responses on January 29, 2015. (Docket Nos. 48 and 49.) This matter is now ripe for decision and is before the undersigned pursuant to Local Rule

of Prisoner Litigation Procedure 2.

## I. Contentions of the Parties

### A. *Plaintiff's Complaint*

Plaintiff's Complaint refers to an incident that occurred in October 2013. At or around that time, Robert Brady, an inmate with whom Plaintiff allegedly had previous problems at Mount Olive Correctional Facility, was transferred to the Northern Correctional Facility ("NCF"). (Docket No. 8 at 11.) Plaintiff alleges that there is an $8,000.00 bounty on his life. (Id. at 8.) He requested that he be moved to the special management pod. (Id. at 11.) His request was granted and he was temporarily moved to special management. (Id.) Subsequently, Defendants Griffith, Nine, and Mills conducted a special management hearing. (Id. at 12.) Plaintiff's request for special management was denied. (Id.) He was returned to the general population. (Id.) Three (3) days later, Plaintiff was in an altercation with Brady. (Id.) He alleges that he severely injured his right hand, damaging it "for the rest of [his] life." (Id.) Plaintiff also states that he got "segregation time" for defending himself. (Id.)

Plaintiff raises the following claims:

1. Defendant Griffith failed to protect him from being assaulted;

2. Defendant Rubenstein, as Commissioner, has a "mandatory duty to protect inmates from assaults of any kind";

3. Defendant Gardner denied Plaintiff's grievance concerning special management;

4. Defendants Mills and Nine "sat on the special management committee and denied me to be placed on special management";

5. Defendant Pszczolkowski upheld the decision of the special management committee; and

6. Defendant Miller responded to his grievance and failed to correct the problem.

(Id. at 8-10.) As relief, Plaintiff wants his disciplinary violations expunged from his record; to be placed in special management; to receive an Order precluding his transfer to another facility such as Huttonsville or Mt. Olive; and to be compensated in the amount of $10,000.00 from each named defendant and $100.00 for each day he spent in segregation. (Id. at 13-14.)

*B.    Defendants' Motion to Dismiss*

Defendants assert that Plaintiff's Complaint should be dismissed for the following reasons:

1. The NCF is not a proper party to this action;

2. Plaintiff has not alleged sufficient personal involvement as to certain defendants;

3. Plaintiff failed to exhaust available administrative remedies;

4. Defendants are entitled to qualified immunity;

5. Plaintiff cannot pursue a 42 U.S.C. § 1983 claim based upon *respondeat superior*;

6. Plaintiff cannot sustain a violation of his Eighth Amendment rights;

7. Plaintiff's Complaint should be dismissed as a matter of law pursuant to W. Va. Code § 29-12A-6(d); and

8. Plaintiff's Complaint should be dismissed as a matter of law pursuant to W. Va. Code § 55-17-3(a)(1).

(Docket No. 38 at 5-18.)

*C.    Plaintiff's Responses*

Plaintiff filed two replies which are substantially identical. He asserts that he never included the Northern Regional Jail and Correctional Facility as a defendant to this action. (Docket No. 48

at 3.) Plaintiff claims that all defendants had "actual knowledge through grievances, and the lack of policy does place the Defendants acting in a personally act of denying the Plaintiff his Eighth Amendment right to be protected." (Id. at 8.) Overall, Plaintiff argues that his Eighth Amendment rights were violated because he was assaulted "by a fellow inmate after he advised the Defendants of the known risk of being harmed, and it was ignored to such a degree he was placed in mainline population and assaulted be [sic] the very person he told them about." (Id. at 15.)

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions"

or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### III. Analysis

*A.     Northern Regional Jail and Correctional Facility*

Plaintiff does not name the Northern Regional Jail and Correctional Facility in his Court-approved Complaint. It appears that the facility was added as a defendant from Plaintiff's original Complaint, which took the form of a letter to the Clerk of Court. (Docket No. 1.) Plaintiff did not name any defendants in that Complaint; he only stated that he had "issues here at Northern Correctional Facility dealing with staff." (Id. at 1.)

Defendant asserts that the facility should be dismissed because it is not a proper party under § 1983. "Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."

5

Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); see also Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Roach v. Burch, 825 F. Supp. 116, 117 (N.D. W. Va. 1993) (finding that the West Virginia Regional Jail Authority is "in effect the State of West Virginia" and not a person under § 1983). In his response, Plaintiff agrees, stating that he did not name the Northern Regional Jail and Correctional Facility as a party to this action. Accordingly, the undersigned finds that Defendants' motion to dismiss should be granted as to the Northern Regional Jail and Correctional Facility.

### B. *Defendants Gardner, Rubenstein, and Miller*

Plaintiff alleges that Defendant Gardner denied his grievance about special management. (Docket No. 8 at 9.) He alleges that Defendant Rubenstein, as Commissioner, has supervisory authority and should have taken action to prevent the alleged violations of his rights. (Id.) Plaintiff also claims that Defendant Miller violated his rights by denying his grievance. (Id. at 10.)

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

Here, the only action Plaintiff attributes to Defendants Gardner and Miller is denial of his grievances. "This is not the type of personal involvement required to state a [§ 1983] claim."

Cayton v. Stewart, No. 3:12-cv-96, 2014 WL 769631, at *7 (N.D. W. Va. Feb. 25, 2014) (citing Paige v. Kupec, No. Civ. A. AW-02-3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003).

Furthermore, there is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, 550 F.2d at 928. A supervisor may be liable under § 1983 if the following elements are established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1999).

Here, Plaintiff alleges that Defendant Rubenstein, as Commissioner, "has a mandatory duty to protect inmates from assaults of any kind and having prior knowledge before being assaulted and failed to correct." (Docket No. 8 at 9.) He further states that as Commissioner, Defendant Rubenstein has "control of safety and security at his facilities." (Id.) Nevertheless, Plaintiff has failed to make any allegations revealing the presence of the elements set forth above. Accordingly, Plaintiff cannot establish supervisory liability against Defendant Rubenstein.

In sum, Plaintiff has failed to state a claim against Defendants Gardner, Miller, and Rubenstein. Even assuming that Defendants Gardner and Miller did deny Plaintiff's grievances at the various levels, this is insufficient to state a claim under § 1983. Furthermore, Plaintiff has not established the requisite elements to support supervisory liability against Defendant Rubenstein.

C.  *Exhaustion of Administrative Remedies*

Under the PLRA, a prisoner bringing an action with respect to prison conditions under Bivens, § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion as provided for in § 1997e(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to filing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103. The Supreme Court has concluded that "failure to exhaust is an affirmative defense under PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).

As this Court has acknowledged,

[t]he WVDOC has established a three level grievance process for prisoners to grieve

---

[1] Porter, 534 U.S. at 524.

8

their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Arbogast v. Wexford Med., No. 3:14-cv-79, 2015 WL 1791918, at *5 (N.D. W. Va. Apr. 15, 2015).

Plaintiff has attached several grievances to his Complaint. In the first, dated December 23, 2014, Plaintiff asks for his last grievance "to be handled properly." (Docket No. 8-1 at 1.) He states:

> Agian [sic] I feel I'm being harrassed [sic] by certian [sic] C.O.'s because of mine & Corporal Tenants past. Also of what happen [sic] to me & inmate Robert Brady. I was shook down 3 days in a row while in lock up over Brady, they found B.S. to write me up. Then one month later I receive [sic] the two not one two contraband write ups & was put in the hole for 30 days on Christmas & my birthday when if properly tooken [sic] care of I could speak with my family on both cause I would be out of the hole. As soon as my 72 hours was up I got shook down agian [sic].

(Id. at 2.) This grievance does not mention Plaintiff's request for special management.

In the second grievance, also dated December 23, 2013, Plaintiff asks for a "specialist look at my problems." (Id. at 3.) He mentions that two (2) months after the incident with Brady, his hand is still swollen. (Id. at 4.) Plaintiff alleges that he cannot "exercise properly or write for long periods, or grip very hard." (Id.) He requests to see a specialist for this and other medical conditions. (Id.) Again, this grievance does not mention Plaintiff's request for special management.

In Plaintiff's third grievance, dated March 14, 2014, Plaintiff requests not to be transferred to Mt. Olive Correctional Facility, alleging that staff there have harassed him because of another lawsuit with which he is involved. (Id. at 5.) Again, nothing in this grievance relates to any of the issues raised in the instant suit.

In his fourth grievance, dated March 14, 2014, Plaintiff does mention his prior request for

9

special management. (Id. at 6.) However, he only requests assurance "to be housed at NCF." (Id.) Defendant Griffith denied his grievance because Plaintiff raised multiple issues and filed the grievance more than fifteen (15) days after the alleged occurrence. (Id.) Plaintiff appealed to the Warden on March 19, 2014. (Id.) On March 31, 2014, Defendant Pszczolkowski responded, explaining that "there was not enough verifiable information to deem [Plaintiff] special management." (Id. at 7.) However, there was "sufficient information to deem a separation issue between [him] and Inmate Robert Brady." (Id.) However, Defendant Pszczolkowski noted that such would "not assure that [Plaintiff] will remain at NCF." (Id.) Nevertheless, this grievance does not allege that the denial of special management caused Plaintiff harm.

In his fifth grievance, dated March 14, 2014, Plaintiff again requests that he not be transferred away from Northern Correctional Facility. He specifically states that he is "not asking for protective custody," but only to "not be put in danger of loosing [sic] [his] life at Mt. Olive or Huttsonville [sic] if needed names will be provided." (Id. at 8.) Again, this grievance does not mention Plaintiff's request for special management.

In his sixth grievance, dated March 11, 2014, Plaintiff raises multiple issues, including medical and transfer issues. He does mention the incident with Robert Brady. (Id. at 10.) In this grievance, Plaintiff specifically states that he is "in no danger at N.C.F." (Id.) Plaintiff requests assurance that he will remain at NCF, alleging that he would be in danger at Huttonsville or Mt. Olive. (Id.) Again, this grievance does not mention Plaintiff's request for special management.

In his seventh grievance, dated September 1, 2013, Plaintiff claims that Officer Tenant is "threatening [him] & putting [his] life at odds with other inmates." (Id. at 12.) Again, nothing in this grievance relates to any issues raised in the instant action. Furthermore, this grievance was filed

about a month before the issues Plaintiff raises in his Complaint.

In the eighth and final grievance, dated August 27, 2013, Plaintiff again grieves actions allegedly taken by Officer Tenant. (Id. at 14.) He claims that Officer Tenant had been telling other officers to harass him. (Id.) Plaintiff was "concerned about being around Tenant that he is out to get me & has told other inmates and officers he will get me." (Id.) Again, nothing in this grievance relates to any issues raised in the instant action, and this grievance was filed about a month before the issues raised in the Complaint.

In his first response, Plaintiff claims that he "has met the exhaustion requirement as he did file grievance over not being placed on special management." (Docket No. 48 at 10.) He also alleges that Policy Directive 335.00 "does not allow inmates to file grievance concerning disciplinary issues." (Id.) In his second response, Plaintiff asserts that he met his exhaustion requirements by appealing to the Central Office, pursuant to Police Directives 401.01, 326.01, and 325.00. (Docket No. 49 at 11.)

Policy Directive 401.01 is entitled "Correctional Classification Guidelines" and provides that an inmate may appeal a classification decision "at the institutional/facility/center level (Warden/Administrator)."[2] That appeal must be filed "in writing within five (5) days of receipt of the Committee's decision." Even if Plaintiff's one grievance could be construed as an appeal of the denial of his request for special management, the denial occurred in October 2013, and Plaintiff filed the grievance on March 14, 2014, and appealed to the Warden on March 19, 2014. (Docket No. 8-1 at 6.) Accordingly, construing Plaintiff's grievance as an appeal under Policy Directive 401.01 does

---

[2] Although the Policy Directives of the West Virginia Department of Corrections ("WVDOC") are not available online, the Court has been provided a copy of such Policy Directives.

not benefit Plaintiff, as such appeal would be untimely filed.

Policy Directive 326.01 is entitled "Administrative Segregation." The record is unclear as to whether Plaintiff was placed in administrative segregation after the incident with Robert Brady. Nevertheless, an inmate "may appeal his/her placement in Administrative Segregation to the Commissioner of the West Virginia Division of Corrections" "within five (5) days of receipt of the Warden's decision." Plaintiff has not provided any supporting documents to show that he did so after any such administrative segregation determination. Furthermore, even if Plaintiff's March 14, 2014, grievance could be construed as such an appeal, it would again be untimely filed.

Policy Directive 325.00 is entitled "Discipline of Inmates" and provides that an inmate may appeal a disciplinary finding "to the Warden/Administrator of the institution/facility/center" "no later than the fifteenth (15th) calendar day after receiving the hearing report." Again, Plaintiff had not provided any supporting documents to show that he appealed his placement in segregation to Defendant Pszczolkowski.

Plaintiff alleges that Policy Directive 335.00 does not allow inmates to file grievances concerning disciplinary issues. This Directive provides in part:

> This Policy Directive represents the general administrative remedy procedures for the Division of Corrections. Employees are instructed that this Policy Directive will apply to any issue advanced by an inmate that does not have a specific administrative remedy identified by this policy. Inmates should not be told that an issue is not "grievable." If an issue is not properly presented under this Policy Directive, the inmate should be instructed as to the proper policy and procedure for seeking an administrative remedy.

Even assuming that disciplinary issues cannot be grieved under Policy Directive 335.00, again, there is no evidence that Plaintiff utilized the correct administrative remedy procedure for doing so.

In sum, after reviewing the grievances attached to Plaintiff's Complaint, the undersigned

agrees with Defendants that Plaintiff has failed to exhaust his administrative remedies with regard to his claim concerning harm caused by the denial of his request for special management. As set forth above, while one of Plaintiff's grievances mentions the denial of special management, he did not assert that the denial caused him any harm. Furthermore, as discussed above, nothing in the record suggests that Plaintiff presented this claim through any administrative remedy procedures. Accordingly, the undersigned finds that Plaintiff's Complaint is subject to dismissal for his failure to exhaust.

### D. *Eighth Amendment Failure to Protect Claim*

The Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "'deliberate indifference' to inmate health or safety." Id. The Farmer Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." Id. at 834 n.3. An official is not liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Here, Plaintiff alleges that Defendants failed to protect him from being assaulted by Robert

Brady by denying his request for special management. There is no dispute that Plaintiff was involved in an incident with Brady. Plaintiff alleges that Defendants knew that Brady would harm him through his grievances and request for special management. Plaintiff was temporarily placed in special management, but his request was ultimately denied because there was "insufficient verifiable information indicating a need for Special Management." (Docket No. 50-1 at 3.) Plaintiff has not provided the Court with any of the information he presented to the special management committee in support of his request. Furthermore, Plaintiff has presented no information to show that Defendants were aware that Plaintiff had been involved in altercations with Brady in the past. While Plaintiff refers to his grievances as providing knowledge to Defendants, none of the grievances he has provided that were filed before the incident actually mention Brady. Rather, the majority of Plaintiff's grievances refer to problems with staff and inmates at both Mt. Olive and Huttonsville Correctional Centers.

Even if Plaintiff could show exhaustion of his administrative remedies, which he has not shown and cannot show, given the above, the undersigned finds that Plaintiff fails to provide facts from which this court could make a finding that any of the named defendants were actually aware of any facts from which an inference could be drawn that Plaintiff was at risk of injury at the hands of Brady before the incident in October 2013. Accordingly, the undersigned finds that Plaintiff has failed to state an Eighth Amendment failure to protect claim, and recommends that his Complaint be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' "Motion to Dismiss" (Docket No. 37) be **GRANTED**. The undersigned further **RECOMMENDS** that

14

Plaintiff's Complaint (Docket No. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: May 15, 2015

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE